UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-60639-CIV-SEITZ/O'SULLIVAN

AT&T MOBILITY, LLC, *et al.*,

      Plaintiffs,

v.

DIGITAL ANTENNA, INC.,

      Defendant.
_____/

## ORDER DENYING MOTION TO AMEND/SUPPLEMENT COMPLAINT [DE-90] and GRANTING IN PART ALTERNATIVE MOTION FOR ENLARGEMENT OF PRE-TRIAL DEADLINES [DE-96]

THIS MATTER is before the Court on two motions of Plaintiffs AT&T Mobility, LLC and AT&T Intellectual Property II, L.P. ("ATT"). ATT's first motion, DE-90, seeks Leave to Amend the Complaint and for Enlargement of Deadlines, which Defendant Digital Antenna, Inc. opposes [DE-93]. Although titled "Motion for Leave to Amend," in their reply [DE-95], ATT states it actually wants to supplement the complaint under Federal Rule of Civil Procedure 15(d).[1] The motion essentially asks (1) to resurrect ATT's dismissed false advertising claims through its new product, the 3G Microcell; (2) to potentially join two new plaintiffs, CSI and PowerWave, beyond the ordered date for adding parties; and (3) to obtain a four-month enlargement of all scheduled case management dates, including the trial date.

ATT's second motion, DE- 96, was filed in the event the Court denied the first motion for enlargement of the pre-trial deadlines. It seeks extensions of the deadlines for joining parties and amending the pleadings, as well as for expert discovery and for the filing of summary judgment and *Daubert* Motions. ATT represents that the extension is necessary because its trademark survey to prove actual confusion on its trademark claim will not be completed for 90 days. Defendant opposes the motion [DE-97] and ATT has replied [DE-100]. Notwithstanding ATT's representation [*see* DE-96 at 3], that the second proposed extension would not affect the trial date, it will. The new deadline for summary judgment and *Daubert* motions would require the Court to

___

[1] This Rule provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

change the April trial date because these motions would not be ripe until a few days before the parties' pre-trial stipulation due date of March 4, 2011; the pretrial conference is set for March 14, 2011. Thus, the Court would have about two weeks to consider and rule on all motions which, to date, have never been few or short.

As discussed below, the Court will deny ATT's motion to amend/supplement because ATT has not met its burden to show that the proposed supplements and potential addition of new parties at this stage will promote judicial economy, a speedy resolution of this action and will not prejudice the Defendant. After the expenditure of considerable resources by both the Court and the parties, this case was significantly simplified by the dismissal with prejudice of the false advertising claims, *see* Order of February 8, 2010 [DE-79]. To allow ATT to amend/supplement at this stage of the case would render the time and effort spent for the past year a waste. Moreover, ATT's case management approach thus far frankly guarantees that the proposed amendments or supplementations will unnecessarily delay the resolution of this case. Justice would best be served if ATT first completes its required due diligence including any expert analysis to support its proposed new claims, so it can determine whether it has the necessary facts to support them and whether other parties are in fact interested in joining its litigation efforts. If such is the case, then the new parties and ATT will have the right to file a new lawsuit rather than bog down this simplified case with entirely new and expanded claims and parties. As to the extension of time to disclose experts, although ATT has not demonstrated that it has diligently undertaken its responsibilities to prosecute this case,[2] the Court will grant a limited extension of time for expert discovery and the filing of summary judgment and *Daubert* motions to enable them to be considered and ruled on prior to filing of the pre-trial stipulation.

Background

ATT brought this suit to enjoin Digital Antenna, Inc. ("Digital") from marketing its PowerMax signal

---

[2]It is noteworthy that ATT did not indicate when it commissioned its market research survey to support its trademark infringement claims. [*See* DE-96 at 2]. ATT has known since early February 2010 that the case was proceeding on the trademark claims. Moreover, in April 2010, ATT agreed to an August 13, 2010 deadline for disclosure of its experts. Presumably ATT's counsel spoke with its experts prior to agreeing to this deadline. In any event, it demonstrates a lack of diligence to wait until the due date, August 13, to advise the Court that the survey would not be completed in time that ATT committed to for disclosure.

amplifier to consumers for use with ATT cellular phones, alleging claims of false advertising, trademark infringement, and tortious interference with contractual relationships. [DE-1]. ATT moved for a preliminary injunction [DE-2] and Digital moved to dismiss the complaint [DE-21], which the Court converted to a motion for summary judgment [DE-75]. After expedited discovery, full briefing, and a four-day evidentiary hearing, in a forty-page order, the Court denied ATT's motion for preliminary injunction and dismissed with prejudice ATT's false advertising claims.[3] [DE-79]. The Court found that neither amendment nor further discovery would cure the prudential standing deficiencies in ATT's false advertising claims but that the trademark infringement, tortious interference, and their FDUTPA overlays survived. [DE-79 at 16-17]. Thus, as of February 9, 2010, this case was simplified to focus on these two basic theories.

On April 27, 2010, approximately two months after the Court's order dismissing the false advertising claims with prejudice, the parties filed an Amended Joint Status Report [DE-81] setting June 11, 2010 as the deadline to join parties and July 9, 2010 as the deadline to amend the pleadings.[4] On July 9, 2010, ATT timely filed its motion to amend, but it also requested to join two additional parties after the deadline for joinder and a four-month enlargement of the case management deadlines to allow the parties to conduct discovery on the new false advertising claims.

Legal Standard

Because ATT seeks to supplement the Complaint by re-alleging the dismissed false advertising claims

---

[3]For organizational purposes, the claims in the Complaint's six counts can be grouped under three headings. First, the false advertising claims are in Counts I (Lanham Act False Advertising), II (Florida Deceptive and Unfair Trade Practices Act "FDUTPA") and IV (Florida Statutory False Advertising). The trademark infringement claims are in Count II (FDUTPA), V (Lanham Act trademark Infringement) and VI (Common Law Trademark Infringement). Finally, the tortious interference claims are in Counts II (FDUTPA) and III (Florida Tortious Interference).

[4]The Court adopted the parties' amended proposed dates on June 16, 2010 which set a discovery cutoff of November 5, 2010, summary judgment and *Daubert* motions deadline of November 19, 2010, the pretrial stipulation due date for March 4, 2011, the pretrial conference for March 14, 2011, and the trial for April 11, 2011. [DE- 88]. Nearly a year earlier, on August 14, 2009, the parties had suggested a case management plan of: joinder of parties by January 16, 2010; amendment of pleadings by February 13, 2010; a discovery cutoff of April 16, 2010 and May 7, 2010 for fact and expert discovery, respectively; the filing of summary judgment and *Daubert* motions by May 3, 2010; and an October 2010 trial date. [DE-42].

now that it has begun to market its new 3G Microcell product,[5] leave of the Court is required. Fed. R. Civ. P. 15(d). A court has the discretion to permit supplementation even though the original pleading is defective in stating a claim or defense. However, as with a motion to amend, a court may deny a supplement to a complaint for "any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Forman v. Davis*, 371 U.S. 178, 182 (1962); *see also Freeman v. Continental Gin Co.*, 381 F.2d 459, 469-70 (5th Cir. 1967)("[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim").[6] Furthermore, because ATT requests a modification of the scheduling order to add possibly two plaintiffs and to undertake the new discovery that the supplemental claims and new parties would entail, ATT must also demonstrate "good cause" under Rule 16(b) of the Federal Rules of Civil Procedure before the Court will consider whether an amendment or supplementation is appropriate under Rule 15 of the Federal Rules of Civil Procedure. *See Milenium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007).

Discussion

### A. Motion to Amend/Supplement and Enlarge Deadlines

Courts liberally allow amendments or supplements because ordinarily they are efficient mechanisms to refine the pleadings to reflect the facts that diligent parties learn during discovery or to address new events which impact the dispute between the parties and that can be efficiently resolved in the course of the litigation. ATT's proposed supplementation, however, does not fit the ordinary circumstances for supplements or amendments. First, such supplementation will take this case, with two months left for discovery, back to the pleading stage where it was over a year ago. Second, given the fact that the new product that is the genesis of the

---

[5] This is a stationary, miniature cell tower which ATT began marketing in April 2010.

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions rendered prior to close of business on September 30, 1981.

supplementation is a stationary one as opposed to a mobile booster,[7] it is more likely than not that there will be renewed motions to dismiss and a re-litigation of the standing issues, at least as to ATT.  The Court and parties spent significant time and resources on this issue last fall and early winter as summarized in the forty-page Order denying the preliminary injunction and dismissing the false advertising claims with prejudice.  [*See* DE-79]. There is no guarantee that ATT will be any more successful with its second, resource-taxing, bite at the apple. Moreover, while supplementation can be used to correct a defective pleading, here that is not the case.  ATT clearly recognizes that the fatal defect cannot be cured through better pleading or discovery of the facts because it has never sought to vacate, alter, amend, or otherwise request a revisiting of the dismissal with prejudice even though it blithely comments that the Court's earlier decision is not final.  Nonetheless, ATT's attempt to resurrect the dismissed claims via the proposed supplementation is somewhat akin to engrafting a horse onto a horsefly – if it doesn't smother the fly it will certainly ensure that it never flies.  Furthermore, assuming the potential two new plaintiffs actually seek to join,[8] the Court, if not the parties, will spend even more of its limited resources addressing motions to dismiss as to these parties.  This case is close to a final resolution on the two theories identified since February 2010.  The Defendant should not have to outlay additional resources in defending this action because ATT has just come to market with a new product and its lawyers have, on the last day for amendments, divined an admittedly creative attempt to try to circumvent a dismissal with prejudice.

ATT argues that "good cause" exists to enlarge the deadline to join parties because it would be more efficient to litigate ATT's re-pled false advertising claims in the same lawsuit as with CSI and Powerwave's false advertising claims.  However, the issue is not whether ATT's resurrected false advertising claims should be

---

[7] The placement of Defendant's product, the PowerMax on boats and in vehicles, i.e., moving locations, is a key factor in ATT's claims of disruptions in service to its customers, which then turns the customers into lost customers or "churners" and "brand assassins."  [*See* DE-79 at 6-12].

[8] The proposed amendment, [DE-90-2], does not include the two new potential plaintiffs and there is no notice filed by either indicating an interest in joining.  Thus, it appears the question of joinder, may at best, still be in the initial conceptual stage.  Before proposing such a fundamental expansion of this presently streamlined case, ATT would do well to consider its obligations of pre-suit due diligence as well as think through a realistic litigation management approach that achieves the promise of Rule 1 of the Federal Rules of Civil Procedure, namely that civil actions and proceedings be administered to secure the just, speedy and inexpensive determination of every action and proceeding.

litigated in the same lawsuit as CSI and Powerwave's claims, but whether ATT's, CSI's and Powerwave's false advertising claims should be litigated in *this* lawsuit. While ATT asserts that it would be inefficient to have ATT, CSI and PowerWave litigate these issues in separate suits, other than the fact that both ATT and Digital are parties in this action, ATT has provided no support for its efficiency argument as it applies to this lawsuit, rather than in a separate lawsuit. Indeed, just looking at the timing of the motion to amend, and then the shift to treating it as a motion to supplement plus the lack of consideration as to how the proposal will impact on others involved in the administration of this case, suggests that efficiency is only a buzz-word that counsel has employed rather than an apt description of an habitual approach to litigation. Moreover, the Court agrees with Digital that interjecting new parties and new issues "will confuse the presentation of evidence, and impede the resolution of those claims." [DE-93 at 12]. Accordingly, ATT has not shown the good cause necessary to extend the joinder deadlines and the Court will deny the request for enlargement of time to join parties and will deny the request for enlargement of time for discovery.

A court has broad discretion in determining whether to grant a motion to supplement the complaint. Fed. R. Civ. P. 15(d). Having considered the motion, the nature of the supplement, its timing, the posture of the case, the amount of time the Court and parties have already spent on issues that the supplement hopes to cure but is not guaranteed to do so, the negative impact that such supplement will have on efficient, speedy case management and the resources of the Court and parties, and the other options available to ATT to pursue its new claims, the Court will deny ATT's motion to supplement.

### B. Alternative Motion to Enlarge Deadlines

ATT initially argued there was "good cause" for a four-month enlargement of the dates in this case, including the trial date because additional discovery will be required on ATT's new false advertising claims. A month later, in its alternative motion, ATT asserts that a two-month extension of expert discovery and the filing of motions for summary judgment and *Daubert* motions can be accomplished without moving the trial date and it is necessary because the surveys it commissioned to support its trademark infringement claim were not completed on time, but once completed, i.e. "within 90 days,"ATT will be able to disclose its experts.

-6-

ATT has not shown "good cause" for these extensions. In fact, it is clear it has not been diligent. Presumably, as part of its pre-suit assessment of its claims, it engaged experts to assess the strength of the evidence to support the claims. Also, presumably such pre-suit investigation enabled ATT, a year ago, to propose April 2, 2010 for its expert disclosures and May 7, 2010 for expert discovery cut-off. [DE-42 at 6]. If ATT did not engage its experts prior to filing suit, diligence required hiring them sufficiently in advance to timely meet the April 2 and May 7 deadlines. Additionally, once the February 9, 2010 Order made it clear that the case would be proceeding on the trademark claim, there has been no reason presented why the experts did not begin their survey work then, or at least, determine a correct timetable to complete the survey. In any event, ATT should not have represented to the Court on April 27, 2010 that it could complete expert disclosures on August 13, 2010, if it could not. ATT's poor planning should not impose burdens on the Defendant or the Court. However, because the Court is just now ruling on the motion to amend/supplement, it will grant a modest modification of expert discovery, dispositive and *Daubert* motions deadlines. To keep this case on track, the Plaintiffs shall have until September 17, 2010 to file expert disclosures, Defendant shall have until October 18, 2010 to file its expert disclosures, all discovery must be completed by November 19, 2010, and all motions for summary judgment and Daubert motions must be filed no later than December 3, 2010. There shall be no changes to any other deadlines including the dates for amendment of the pleadings and joinder of parties.

Conclusion

For the reasons discussed above, it is

ORDERED that:

(1) Plaintiffs' Motion for Leave to Amend the Complaint and for Enlargement of Time [DE-95] is DENIED.

(2) AT&T's[9] *Alternative* Motion for Enlargement of Pre-Trial Deadlines [DE-96] is DENIED in part and GRANTED in part. It is granted to the extent that:

---

[9] The title of this motion and the first line mis-describes Plaintiffs as "Defendant" AT&T and "Defendants" AT&T Mobility, LLC and AT&T Intellectual Property II, L.P.

(A) Plaintiffs's expert disclosures must be made by **September 17, 2010**;

(B) Defendant's expert disclosures must be made by **October 18, 2010**;

(C) All discovery must be completed by **November 19, 2010**;

(D) All summary judgment and *Daubert* motions must be filed by **December 3, 2010**.

(3) The motion is DENIED as to any other deadline changes. All other deadlines, including the present dates for amendment of pleadings and joinder of parties, remain unchanged.

DONE and ORDERED in Miami, Florida, this 9th day of September, 2010.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Judge O'Sullivan
    Counsel of Record